HERNANDEZ V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-458-CR

RITCHIE ELBERT HERNANDEZ A/K/A APPELLANT

RITCHIE E. HERNANDEZ

V.

THE STATE OF TEXAS STATE

------------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant Ritchie Elbert Hernandez a/k/a Ritchie E. Hernandez appeals his conviction and thirty-five-year sentence for murder.  In two issues, appellant complains that the evidence is legally and factually insufficient to support the jury’s verdict.  We affirm.

II.  Background Facts

On March 7, 2004, Lisa Jones and her brother were driving in the Westpoint area of Fort Worth when Jones saw a man covered in blood lying face-down in a ditch.  Jones saw another man, later identified as appellant, sitting behind the wheel of a car on the side of the road near the ditch.  Jones pulled over to the nearest stop sign and called 9-1-1. 

While Jones waited for the police to arrive, she saw appellant get out of the car, walk over to the man in the ditch, try to lift him, fail, and lay the man back on the ground.  Appellant, who appeared to be in shock, next walked back to his car, leaned on its bumper, rocked back and forth, and attempted to use his cell phone.

Later, Latasha Morgan, a nurse’s aide, also drove by.  Morgan saw appellant kneeling on the ground near a body and crying hysterically.  Morgan got a towel from her car to use as a pressure bandage, brought the towel to appellant, and told appellant to apply pressure.  Appellant did not comply, and told Morgan that “[t]hose niggers did it.”

When the paramedics arrived, they noticed that the victim, who was later identified as Charles Perry, had several deadly chest wounds.  Although the paramedics took Perry to the hospital, Perry was dead before he left the scene.  

Before Perry was transported, however, Officer Shawn Elliott from the White Settlement Police Department stopped at the scene and saw appellant lying over Perry in the ditch.  Both appellant and Perry were covered in blood.  Officer Elliott asked appellant what happened, and appellant said that he had picked up Perry from a motel on Highway 80.  According to appellant, Perry was already injured when he picked him up.  When Officer Elliott asked why appellant did not transport Perry to a hospital, appellant said that Perry did not want to go because he had some illegal narcotics on him.  Officer Elliott next asked appellant for more details about where the assault had taken place, and this time appellant stated that he had picked up Perry at Rosedale and I-35, which is not near Highway 80. 

An autopsy revealed that Perry died of multiple stab wounds and blunt force trauma to the head.  Three days after Perry died, the officers obtained consent to search a fenced-off area near where Perry’s body was found; during this search, they found a butterfly knife with Perry’s blood on it lying several feet from the nearby fence line.  The knife contained the blood of at least one other person. 

Appellant was charged with and convicted of murder and sentenced to thirty-five years’ incarceration.  This appeal followed.

III.  Sufficiency of the Evidence

Appellant contends that the evidence is legally and factually insufficient to support the jury’s verdict that he was the person who murdered Perry.   

A.  Standards of Review

1.  Legal Sufficiency

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).

2.  Factual Sufficiency

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party.  
Watson v. State
, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); 
Drichas v. State
, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder’s determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder’s determination is manifestly unjust.  
Watson
, 204 S.W.3d at 414-15, 417; 
Johnson v. State
, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict.  
Watson
, 204 S.W.3d 417.

B.  Analysis
 

A person commits murder if he intentionally causes the death of another by inflicting serious bodily injury and committing an act clearly dangerous to human life.  
See
 
Tex. Penal Code Ann. 
§ 19.02(b) (Vernon 2003).  Appellant contends that Perry was actually stabbed in a fight with “other individuals at another location” and that Perry refused appellant’s offer to take him to the hospital because he feared he would be arrested on drug charges.  According to appellant, he was simply trying to help Perry, and the State failed to produce sufficient evidence to establish that he was the murderer.  We disagree.  

At trial, Jones testified that she saw a man lying face down in a ditch.  When Jones stopped and called 9-1-1, she saw appellant sitting in an idling car near the body; the car’s driver’s side door was shut and the passenger side door was open.  Jones saw appellant get out of the car, walk over to Perry, try to lift Perry by the arms, fail, place Perry back on the ground, and then return to the rear of the car.  Next, appellant sat on the car’s bumper, rocked back and forth, and appeared to make a phone call.  No evidence was ever produced regarding who appellant was attempting to call.  According to Jones, appellant was shocked as if he “wasn’t sure what to do next.”  Jones did not report seeing anyone in the area around Perry’s body except appellant. 

Several witnesses testified that they saw appellant kneeling over Perry, who was lying on the ground.  Officer Elliott testified that Perry was covered in blood and that appellant’s hands and chest were covered in blood.  The interior of the car was also coated with blood.  The crime scene officer testified that he believed the murder had occurred inside the car.  On the other hand, Dr. Gary Sisler, the doctor who performed Perry’s autopsy, testified that the positions and angles of the stab wounds suggested that Perry was in an upright or standing position when he was stabbed.  Dr. Sisler acknowledged that he had not seen the car, however, where blood was slung from the dashboard to the hatchback and across both the passenger’s and driver’s doors.  Dr. Sisler also testified that the positions and angles of the wounds reflected the relative position of the body in relation to the knife; either the knife was changing position relative to the body, or the body was changing position relative to the knife.  The medical examiners opined that Perry’s wounds were inflicted thirty to forty minutes before the paramedics arrived and possibly up to one hour before he ultimately died. 

Appellant made several inconsistent statements about where he picked up Perry and about Perry’s wounds.  He told Morgan, the nurse’s aide, that “[t]hose niggers did it” and mentioned a Motel 6 “across town.”  At first, appellant told Officer Elliott that he picked up Perry at a motel on Highway 80 and that Perry had already been stabbed.  When Officer Elliott pressed him for more details, however, appellant said that he actually picked up Perry at “Rosedale and 35,” which is not near Highway 80. 

According to appellant, Perry was already injured when he picked him up, and refused medical treatment because he feared being arrested on drug charges or because he had some illegal narcotics “on him.”  Perry was combative with the paramedics when they first tried to load him onto the stretcher, and his injuries were serious; he had two collapsed lungs, blinding stab wounds to both eyes, fractures to his nose, and his upper lip had been torn away.  The medical examiner did not find any narcotics “on Perry;” however, the examiner determined that Perry was under the influence of marijuana, cocaine, and methamphetamine when he died.

An autopsy revealed that Perry died of multiple stab wounds and blunt force trauma to the head.  During a search of a fenced-off area near the scene, officers found a butterfly knife with traces of Perry’s blood lying several feet from the fence line and approximately eighteen feet from the car that appellant was sitting in when Jones drove up.  Dr. Sisler testified that the knife was capable of causing both the stab wounds to Perry’s chest and the blunt trauma wounds to his head.  Moreover, the amount, location, and type of blood splatters in appellant’s car show that the assault likely took place in his car.

The testimony admitted at trial does not support appellant’s argument that the evidence was insufficient to establish his guilt.  For example, witnesses saw appellant only sit in a car, pace at the rear of the car, kneel on the ground, attempt to lift Perry’s body one time without success, and lie across Perry’s body.  None of this involves strenuous physical activity.  However, Officer Elliott testified that appellant appeared to be “physically worn out.”  Further, appellant claimed that Perry told him not to take him to a hospital despite the fact that Perry was bleeding profusely, had two collapsed lungs, had puncture wounds to both eyes, had a broken nose, and his upper lip had been torn away.  Appellant does not explain how Perry was physically or mentally capable of giving him oral instructions against taking him to the hospital or how Perry was able to get out of the car and walk into a ditch.  

Further, none of appellant’s hypotheses are reasonable.  In his scenario, appellant found Perry somewhere in Tarrant County bleeding profusely, blind, and probably unable to speak from the broken nose and torn upper lip.  Instead of taking Perry to the hospital or calling for help, appellant drove Perry to a remote area in West Fort Worth.  Somehow, Perry managed to sling blood in appellant’s car from the rear hatch to the dashboard before getting out of the car, walking to a ditch, and lying face down.  While this was happening, appellant sat behind the wheel of the car with the motor idling.  Significantly, the probable murder weapon bearing Perry’s blood and DNA appeared several feet from the ditch where Perry was found.  

The jury was free to consider the State’s theory of how this crime occurred and compare it with appellant’s claim that he was merely “attempting to help Mr. Perry in the minutes leading up to his death, but because [sic] the large amount of blood loss, was unable to save him.”

After reviewing the evidence in a light most favorable to the verdict, we conclude that any rational juror could have found the essential elements of murder beyond a reasonable doubt.  
See
 
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789; 
Hampton
, 165 S.W.3d at 693.  Further, the evidence supporting the conviction is not so weak, nor the contrary evidence so overwhelming, that the jury’s verdict is clearly wrong or manifestly unjust.  
Watson
, 204 S.W.3d at 414-15, 417.  Therefore, we hold that the evidence is both legally and factually sufficient to support the jury’s finding.  Accordingly, we overrule appellant’s two issues. 

IV.  Conclusion

Having overruled appellant’s two issues, we affirm the trial court’s judgment.  

TERRIE LIVINGSTON

JUSTICE

PANEL B: LIVINGSTON, WALKER, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: May 31, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.